IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CAROL A. EVERETT, | ) | |
| | ) | |
| | ) | Case No. 07 C 5440 |
| Plaintiff, | ) | |
| | ) | Judge Virginia M. Kendall |
| v. | ) | |
| | ) | |
| COOK COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Carol A. Everett ("Everett") filed suit against her former employer, Cook County, alleging that it discharged her in violation of the *Shakman* Consent Decree, § 1983, Title VII, and § 1981. More specifically, Count I of Everett's Second Amended Complaint claims a violation of the consent decree entered in *Shakman v. Democratic Org. of Cook County*, 481 F. Supp. 1315, 1358 (N.D. Ill. 1979), *vacated sub nom. Shakman v. Dunne*, 829 F.2d 1387, 1389 (7th Cir. 1987), forbidding Cook County from basing any aspect or term of employment on politics. Count II claims that Everett was laid off for reasons of political patronage in violation of § 1983 and the First Amendment, Count IV claims race and gender discrimination in violation of Title VII, and Count V seeks a writ of certiorari requiring Cook County to certify the entire record of proceedings before its hearings officer for review by this Court. Pursuant to an agreed motion by the parties, the Court dismissed Count III of Everett's Second Amended Complaint alleging race and gender discrimination in violation of § 1981 on September 4, 2009. (*See* R. 94.) Cook County now moves for summary judgment on each of Everett's claims. For the reasons stated below, the Court grants

Cook County's Motion for Summary Judgment as to Counts I, II, and VI, and relinquishes jurisdiction over Count V.

## STATEMENT OF UNDISPUTED FACTS[1]

### I.    Relevant Cook County Bureau of Health Employees in 2007

Cermak Health Services of Cook County ("Cermak") is a division within the Bureau of Health for Cook County (the "Bureau of Health") that provides healthcare to Cook County Detainees. (Pl. 56.1 Resp. ¶¶ 1, 8.) The Bureau of Health employed Dr. Robert Simon ("Simon") as Interim Bureau Chief between January 2007 and approximately April or March 2008. (Pl. 56.1

---

[1] Citations to Cook County's Local Rule 56.1(a)(3) Statement of Material Facts have been abbreviated to "Def. 56.1 TAB __, p.__."; citations to Everett's Local Rule 56.1(a)(3) Response to Cook County's Statement of Material Facts have been abbreviated to "Pl. 56.1 Resp. ¶ __."; citations to Everett's Local Rule 56.1 Statement of Additional Facts Requiring the Denial of Summary Judgment have been abbreviated to "Pl. 56.1 TAB __, p.__."; and citations to Cook County's Response to Everett's Local Rule 56.1 Statement of Additional Facts Requiring the Denial of Summary Judgment have been abbreviated to "Def. 56.1 Resp. ¶ __."

The Court notes that both parties have failed to comply with Local Rule 56.1. Everett frequently denies Cook County's statements of fact without citation to the record or by introducing new facts that do not directly refute the assertions stated. Cook County also raises a nearly identical set of objections to each of Everett's Additional Facts Requiring the Denial of Summary Judgment: that they are conclusory, and in the alternative are hearsay, and in the alternative are not supported by a deposition, affidavit, or by the cited testimony. These objections are unfounded with respect to many of Everett's Additional Facts. Some of Everett's Additional Facts, however, do contain inadmissible conclusory assertions or inadmissible hearsay. *See Scaife v. Sheahan*, 446 F.3d 735, 740 (7th Cir. 2004) ("To survive summary judgment, [plaintiff must] do better than to make such broad-brushed, conclusory allegations."); *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("A party may not rely upon inadmissible ;4021;4021hearsay to oppose a motion for summary judgment."). In addition, some of Everett's facts are supported by her own self-serving affidavit executed after the close of discovery. Self-serving affidavits that are not part of the record cannot be used to create a genuine issue of material fact on a motion for summary judgment. *See Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004) ("Self-serving statements in affidavits without factual support in the record carry no weight").

Nonconformity with the Local Rules and the standing orders of the Court is not without consequence. The Seventh Circuit has "repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1." *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) (citing *Bordelon v. Chicago School Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000)). "A district court does not abuse its discretion, when, in imposing a penalty for a litigant's non-compliance with Local Rule 56.1, the court chooses to ignore and not consider the additional facts that a litigant has proposed." *Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809-10 (7th Cir. 2005). Accordingly, this Court will not consider portions of the parties' submissions that are non-responsive, offer conclusory allegations, are predicated on inadmissible hearsay or self-serving affidavits executed after the close of discovery, or do not contain proper support from citations to the record. The Court further disregards all additional facts set forth in Everett's responses that are not properly set forth in her 56.1(b) Additional Statement of Facts. *See* LR 56.1(b)(3)(C)(explaining that the opposing party's response must contain a *separate* statement "of any additional facts that require the denial of summary judgment").

Resp. ¶ 9.) Simon reported directly to Cook County Board President Todd Stroger ("Stroger"). (Pl. 56.1 Resp. ¶ 9.)

The Chief Operating Officer at Cermak in 2007 was David Fagus ("Fagus"), and the Medical Directors were Dr. Sergio Rodriguez ("Rodriguez") and Dr. Connie Manella ("Manella"). (Pl. 56.1 Resp. ¶ 10.) Dr. Eileen Couture ("Couture") served as Director of Emergency Services at Cermak between 2000 or 2001 and 2004, after which she was transferred to Oak Forest Hospital but remained an attending physician at Cermak. (Pl. 56.1 Resp. ¶ 16.) In February 2007, Couture became Interim Medical Director at Cermak, and remained in that position until August 2008. (Pl. 56.1 Resp. ¶ 16.)

As of February 2007, Cermak employed five salaried dentists: Dr. Jack Liu ("Liu"), a Chinese-American male; Dr. Shandra Bundy-Smith ("Bundy-Smith"), an African-American female; Dr. Ronald Townsend ("Townsend"), an African-American male; Dr. Allen Knox ("Knox"), an African-American male; and Everett, a Caucasian female. (Pl. 56.1 Resp. ¶ 23.) Knox was the Dental Director, and all of the other dentists held the position of Dentist II. (Pl. 56.1 Resp. ¶ 23.)

Cook County first employed Everett as a dentist at Cermak on June 14, 1982. (Pl. 56.1 Resp. ¶¶ 1, 8.) She worked full-time at Cermak until 1990 or 1991, then worked half-time until 2005, when she once again began working full time. (Pl. 56.1 Resp. ¶ 6.) Throughout her career, Everett has been involved in several dental organizations, including: the Chicago Dental Society, where she served as branch President; the American Association of Women Dentists, where she served as President; the Illinois Dental Society, where she served as a delegate to the house of delegates; the American Dental Association; and Maytek, an organization that focuses on treating patients with HIV. (Def. 56.1 Resp. ¶ 12.) Membership in such organizations allows dentists to improve their dental skills. (Def. 56.1 Resp. ¶ 12.)

Cermak hired Townsend on January 25, 1993, and he has always worked full time at Cermak. (Pl. 56.1 Resp. ¶ 56.) Knox conducted several evaluations of Townsend over the course of his employment and determined that his performance of his duties was quite sufficient and that he was a very good dentist. (Pl. 56.1 Resp. ¶ 69.) According to the 2003 Dental/Oral Surgery Individual Statistics, when Everett was working 60% time and Townsend was working full time, Everett completed 248 sessions and Townsend completed 284 sessions. (Def. 56.1 Resp. ¶ 8.)

Townsend began a part-time private dental clinic in 1990 or 1991. (Pl. 56.1 Resp. ¶ 58.) In 2004, his practice moved to a new location at 452 E. 75th Street. (Pl. 56.1 Resp. ¶ 58.) Townsend's private dental clinic made a $300 campaign contribution to the 8th Ward Regular Democratic Organization in September 2000. (Pl. 56.1 Resp. ¶ 59.) Townsend made this contribution to the 8th Ward because he purchased tickets from Knox for an 8th Ward fundraiser. (Pl. 56.1 Resp. ¶ 60.) Townsend does not know where the 8th Ward is located or whether Stroger's political base is in the 8th Ward. (Pl. 56.1 Resp. ¶ 60.) Townsend also made two campaign contributions totaling $225 to "Citizens for Lyle" in April 2006 and May 2006. (Pl. 56.1 Resp. ¶ 59.) Townsend is aware that his clinic's location at 452 E. 75th Street is within the 6th Ward and that Freddrenna Lyle ("Lyle") is the City of Chicago Alderman. (Pl. 56.1 Resp. ¶ 61.) Townsend also knows William Beavers, a former City of Chicago Alderman. (Pl. 56.1 Resp. ¶ 61.) Townsend's clinic did not make any other campaign contributions prior to the March 2007 layoffs. (Pl. 56.1 Resp. ¶ 59.)

## II.    Budget Shortfall

In 2007, Cook County had a budget shortfall of $500 million and decided to cut $130 million of that shortfall from the healthcare budget.  (Pl. 56.1 Resp. ¶ 11.)  On January 7, 2007, Stroger directed Simon to submit recommendations to trim the healthcare budget that would have the least impact on quality of care and provision of essential services.  (Pl. 56.1 Resp. ¶ 12.)  Stroger told Simon to submit these recommendations prior to the budget approval deadline of February 29, 2009.  (Pl. 56.1 Resp. ¶ 12.)  Simon then assembled a team of individuals to evaluate the healthcare facilities in order to effectuate $100 million in budget cuts.  (Pl. 56.1 Resp. ¶ 13.)  Once evaluations were complete, a group of directors would present their recommendations for restructuring to Simon and describe the impact of those recommendations.  (Pl. 56.1 Resp. ¶ 13.)

Simon assigned Couture to evaluate all of the Cermak programs, including the Dental Department, on the basis of productivity, services provided, and patient numbers in order to identify which services were essential.  (Pl. 56.1 Resp. ¶ 15.)  Because the National Commission on Correctional Health Care standards for dentistry merely require that emergency dentistry be accessible to detainees, Couture recommended that Cermak serve only emergent needs.  (Pl. 56.1 Resp. ¶ 24.)

In mid to late January 2007, Simon determined that the dental department at Cermak could be reduced to one dentist to address only emergency situations.  (Pl. 56.1 Resp. ¶ 25.)  On January 17, 2007, Simon met with Chief of Cook County Human Resources Kim Gilmore ("Gilmore") and Stroger's Chief of Staff Lance Tyson ("Tyson") to develop a selection process for non-union employees, including dentists, that would result in retaining the best possible employees.  (Pl. 56.1 Resp. ¶ 19.)  It was important to consider factors other than seniority because many times those

individuals with the most seniority would perform less clinical and more administrative work, or would not have as much experience in a particular area. (Pl. 56.1 Resp. ¶ 20.)

Simon then directed Couture to determine who would be the most qualified candidate for the remaining dentist position. (Pl. 56.1 Resp. ¶ 21.)[2] If the recommended individual had the most seniority, then it was not necessary to conduct further interviews; if, however, the individual recommended did not have the most seniority, then the recommendation had to be based on objective criteria, such as productivity, management skills, evaluations, and hours worked. (Pl. 56.1 Resp. ¶ 21.) If a more senior individual had qualifications equal to the individual they were considering, then all of the medical directors, including Couture, were instructed that the most senior individual should be retained. (Pl. 56.1 Resp. ¶ 21.) It was not necessary to interview candidates where one individual was going to be retained and the director could make a determination based on the data and information available. (Pl. 56.1 Resp. ¶ 26.) Because only one dentist would be retained at Cermak, no Cook County rule required Couture to interview the dentists at Cermak prior to the layoffs. (Pl. 56.1 Resp. ¶ 26.)

In determining which dentist to retain, Couture considered each dentist's knowledge about necessary, emergent dental care, such as extractions, pain and suffering, infection, and decay. (Pl. 56.1 Resp. ¶ 30; D. 56.1 TAB 6, pp 74-76.) When Couture worked as Director of Emergency Services at Cermak and as an Emergency Room physician at Stroger, she became aware of certain

---

[2] Everett raises the same objection to several of Cook County's factual statements based on the deposition testimony of Simon, Couture, and Townsend. Everett claims, citing *Reeves v. Sanderson*, 530 U.S. 133, 150-51 (2000), that their testimony is "evidence favorable to the moving party that the jury could reject because the evidence comes from an interested witness." (*See, e.g.*, R. 86 at p. 13.) The Court in *Reeves*, however, addressed the standard for rendering judgment as a matter of law following a trial pursuant to Federal Rule of Civil Procedure 50 ("Rule 50"). *See id.* In reviewing a Motion for Judgment as a Matter of Law after a jury has rendered a verdict, it found that a court should "disregard evidence favorable to the moving party that the jury is not required to believe," as part of its role in not making "credibility determinations." *See id.* The Court noted, however, that like in the "context of summary judgment under Rule 56," the court "should review all of the evidence in the record." *Id.* at 150. Thus, merely because the jury could reject a particular piece of evidence does not render it inadmissible for consideration on summary judgment.

work habits of Cermak dentists, including their responses to calls from ER physicians and complications resulting from their treatment. (Pl. 56.1 Resp. ¶ 29.) Prior to the layoff, Couture reviewed a report that was included in her report to Simon, and was likely made more recently than 2003. (Pl. 56.1 Resp. ¶ 33; D. 56.1 TAB 6, pp 68-69, 70-71.) She also consulted with several medical directors, but does not specifically recall anything that she said to them or they said to her, and threw away the notes that she had from those conversations when she left her position at Cermak in 2008. (Def. 56.1 Resp. ¶¶ 31-32; Pl. 56.1 TAB 10, pp. 59-61.) In making her decision, Couture did not speak with any of the then-current Cermak dentists regarding productivity, time management ability, or his or her desire to assume a leadership role. (Def. 56.1 Resp. ¶ 25.) Indeed, Everett neither interviewed with nor conversed with Couture prior to the layoff. (Def. 56.1 Resp. ¶ 21.) No one asked Everett to provide any information regarding her skills, abilities, and experience prior to the layoff. (Def. 56.1 Resp. ¶ 21.) Couture also did not consult with Knox or Fagus regarding her recommendation or review the Cook County Personnel Rules for Physicians and Dentists. (Def. 56.1 Resp. ¶¶ 26-27, 33.)

When preparing her recommendation to Simon, Couture considered recommending more than one dentist; however, she did not consider the selection of the remaining dentist to be a choice between Townsend and Everett. (Pl. 56.1 Resp. ¶ 27; Def. 56.1 Resp. ¶ 30.) Couture ultimately decided to recommend Townsend to be the dentist retained at Cermak based on her personal experience, her evaluation of the program, and recommendations of others. (Pl. 56.1 Resp. ¶ 34.) She thought it best to retain an individual with management experience and flexibility in providing dental care. (Pl. 56.1 Resp. ¶ 35.) In Couture's experience, Townsend had exhibited flexibility and knowledge by squeezing patients into his schedule for emergent care, always returning her calls, and having a grasp of systemic as well as individual patient problems. (Pl. 56.1 Resp. ¶ 36.)

Couture also determined that Townsend possessed greater leadership skills than Everett and could better reorganize the dental department. (Pl. 56.1 Resp. ¶ 38.) Townsend had experience serving as Acting Director of Dental Services ("Acting Director") on several occasions in Knox's absence. (Pl. 56.1 Resp. ¶ 37.) Although Everett could have informed Knox of her desire to serve as Acting Director in his absence, she never did. (Pl. 56.1 Resp. ¶ 68.) Moreover, while Everett prepared letters to management on five to ten occasions regarding clinical and staffing issues and served in a leadership role when a clinical emergency arose, she has no recollection of assuming such a role between 2005 and 2007. (Pl. 56.1 Resp. ¶ 70, 72; Def. 56.1 Resp. ¶ 10; Pl. 56.1 TAB 5, pp. 21-22.) Like all dentists at Cermak, Everett supervised the dental assistants who worked under her direction. (Pl. 56.1 Resp. ¶ 71.)

Couture was never aware of any political position or affiliation held by either Townsend or Everett. (Pl. 56.1 Resp. ¶ 45.) Everett admits that she has no knowledge that Couture was aware of Townsend's political affiliation, and has no knowledge the Couture based any of her decisions on race or gender. (Pl. 56.1 Resp. ¶ 49, 51.)

In January or February 2007, Couture submitted her report of recommendations to Simon, which described how the budget could be cut in order to retain necessary services. (Pl. 56.1 Resp. ¶ 40.) Couture included the budget reduction plans from the previous Bureau Chief in her recommendation. (Pl. 56.1 Resp. ¶ 28.) She never, however, provided any document explaining how she arrived at the decision to recommend Townsend. (Pl. 56.1 Resp. ¶ 43.) She advised Simon that she thought Townsend was the best qualified for the job in terms of productivity and experience with management. (Pl. 56.1 Resp. ¶ 42.) At the time that Couture made her recommendation, she was not aware that Everett was the most senior dentist at Cermak. (Def. 56.1 Resp. ¶ 37.)

Simon made the final decisions regarding the budge cut recommendations, and specifically who would be retained as a dentist at Cermak. (Pl. 56.1 Resp. ¶¶ 14, 41.) Simon did not know Everett or Townsend, however, and depended on Couture to objectively look at all of the information about the dentists and make her recommendation. (Pl. 56.1 Resp. ¶ 46; Def. 56.1 Resp. ¶¶ 22-23.) Simon did not consult with Knox or Fagus in making his determination, and Fagus is not aware of anyone other than Couture providing information to Simon regarding the dentists' performance prior to the layoff. (Def. 56.1 Resp. ¶¶ 26-28.) At no time did anyone ask Simon to keep a doctor, nurse, or dentist in office based on their personal preferences. (Pl. 56.1 Resp. ¶ 47.) Indeed, prior to the March 2007 layoffs, Townsend did not have conversations or interviews with Simon, Couture, Fagus, Knox, or anyone associated with the Cook County government regarding the reduction in force, his skills, productivity, leadership abilities, management experience, or any desire on his part to assume a leadership role at Cermak. (Pl. 56.1 Resp. ¶ 63.) Everett admits that she has no knowledge that Simon was aware of Townsend's political affiliation, and has no knowledge that Simon based any of his retention decisions on race or gender. (Pl. 56.1 Resp. ¶ 50.)

In February 2007, Cermak erroneously issued layoff letters to Liu, Bundy-Smith, and Knox that were subsequently rescinded on February 22, 2007. (Pl. 56.1 Resp. ¶ 53; Def. 56.1 Resp. ¶ 29.) In late February or early March 2007, Townsend told Everett that the two of them would be the remaining dentists at Cermak. (Pl. 56.1 Resp. ¶ 74.) Cermak subsequently laid off Liu, Bundy-Smith, and Knox, and then laid off Everett on March 29, 2007. (Pl. 56.1 Resp. ¶ 54.) On the Monday after her termination, Everett inferred from a conversation with Townsend that when Everett was laid off, Townsend believed that he would also be laid off because she was more senior than him. (Pl. 56.1 Resp. ¶ 55.)

On June 26, 2007, Fagus sent a letter to Everett explaining the basis for her layoff. (Pl. 56.1 Resp. ¶ 75.) He prepared the letter based on information obtained from Couture. (Pl. 56.1 Resp. ¶ 75.) On June 29, 2007, pursuant to Everett's request, Cook County conducted a hearing for the purpose of reviewing the decision to lay off Everett. (Pl. 56.1 Resp. ¶ 76.) The hearing officer later issued a decision upholding the layoff. (Pl. 56.1 Resp. ¶ 76.)

Later in 2007, because dental services at Oak Forest Hospital ("Oak Forest") were being eliminated, Couture and the CEO of Oak Forest decided to transfer Dr. Tom Prozorovski ("Prozorovski"), the Chief Dental Surgeon at Oak Forest, to provide dental services at Cemak. (Pl. 56.1 Resp. ¶ 64.) Prozorovski was originally borrowed to Cermak and paid out of Oak Forest's budget; in 2008, however, he was transferred to Cermak's budget. (Pl. 56.1 Resp. ¶ 64.) Prozorovski is a 47 or 48 year old Caucasian male who speaks four languages, including Spanish. (Pl. 56.1 Resp. ¶ 65.) For a short period of time in 2008 when the Juvenile Temporary Detention Center ("JTDC") was being upgraded, the JTDC hired Liu for four days a week and Cermak hired him one day a week. (Pl. 56.1 Resp. ¶ 55.)

### III.    Personnel Rules for Physicians and Dentists

The Personnel Rules for Physicians and Dentists ("the Personnel Rules") governed the terms and conditions of employment for dentists at Cermak in 2007. (Pl. 56.1 Resp. ¶ 17.) Personnel Rule 7 ("Rule 7") delineates the procedure for administering a layoff, and does not require Cook County to use seniority in implementing a layoff. (Pl. 56.1 Resp. ¶ 17.) Indeed, no rule requires Cook County to use seniority alone in implementing layoffs. (Pl. 56.1 Resp. ¶ 18.) Rule 7 does, however, state that "where applicable, the BHR Chief shall notify, in writing, the BHS of the names of the Bureau Physicians and Dentists having the least seniority in those classifications affected by the reduction in force in each Bureau Affiliate." (Def. 56.1 Resp. ¶ 35; Pl. 56.1 TAB 15.) No

notification regarding seniority of the dentists was forwarded to Cermak prior to the layoffs at issue. (Def. 56.1 Resp. ¶ 36; Pl. 56.1 TAB 16.)

Rule 7 does not contain provisions for review of a layoff decision. (Pl. 56.1 Resp. ¶ 17.) Personnel Rule 8 ("Rule 8") does, however, identify a grievance process for review of disciplinary action. (Pl. 56.1 Resp. ¶ 17.)

### IV. *Shakman* Decree

In 1972, Cook County entered into a Consent Decree (the "*Shakman* Decree") prohibiting it from "conditioning, basing or knowingly prejudicing or affecting any term or aspect of governmental employment, with respect to one who is at the time already a governmental employee, upon or because of any political reason or factor." (Pl. 56.1 Resp. ¶ 77.) A Supplemental Relief Order ("SRO") entered by Judge Anderson in *Shakman et al. v. County of Cook*, No. 69 C 2145, charged the Cook County *Shakman* Compliance Officer (the "*Shakman* Officer") with the responsibility of investigating and adjudicating claims of political discrimination filed by Cook County employees between August 28, 2004 and February 2, 2007. (Def. 56.1 Resp. ¶ 1.)[3] The

---

[3] Cook County objects to all facts supported by Tabs 1 and 8 of Everett's Rule 56.1 Statement of Additional Facts Requiring the Denial of Summary Judgment. Tabs 1 and 8 are the First and Fourth Reports of the *Shakman* Officer pursuant to the SRO—court documents filed under docket 69 C 2145 in the Northern District of Illinois. Cook County moves to strike all facts supported by a citation to Tabs 1 and 8 as lacking proper foundation and as inadmissible hearsay. "A court may take judicial notice of an adjudicative fact that is both 'not subject to reasonable dispute' and either 1) 'generally known within the territorial jurisdiction of the trial court' or 2) 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) (quoting Fed.R.Evid. 201(b)). "[P]roceedings in other courts, both inside and outside the federal system, may be judicially noticed." *Id.* (citing *Opoka v. INS*, 94 F.3d 392, 394 (7th Cir. 1996)). Thus, the Court takes judicial notice of the filing of these Reports of the *Shakman* Officer.

Taking judicial notice of the filing of these reports does not, however, mean that the content of the reports is necessarily admissible for the truth of the matters asserted. In order for the content of the reports to be admissible for its truth, it must fall within an exception to the hearsay rule. *See* Fed.R.Evid. 801 ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). The public records or reports exception to the hearsay rule provides that: "[r]ecords, reports, statements or data compilations, in any form, of public offices or agencies setting forth. . . (B) matters observed pursuant to a duty imposed by law as to which matters there was a duty to report . . . or (C) in civil actions . . . factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness" are admissible. Fed.R.Evid. 803(8). Here, the First and Fourth Reports of the *Shakman* Officer fall under this exception because they are statements by a court-appointed public officer setting

SRO purported to eradicate unlawful political discrimination as it related to employment practices in departments under the Office of the President of the Cook County Board and the County Health and Hospitals System. (Def. 56.1 Resp. ¶ 2.) The SRO specifically set forth criteria whereby Cook County could achieve "substantial compliance" with the *Shakman* Decree. (Pl. 56.1 Resp. ¶ 77; Def. 56.1 Resp. ¶ 5.) The *Shakman* Officer subsequently reported that 108 claims alleging political discrimination were "found to be compensable" between August 28, 2004 and February 2, 2007. (Def. 56.1 Resp. ¶ 3; Pl. 56.1 TAB 1, pp. 25-26.)

When Cook County conducted layoffs of physicians prior to the layoffs of dentists at issue in this case, the *Shakman* Officer monitored the process "to ensure the County complied with the law prohibiting political discrimination in the terminations that occurred due to the layoff." (Def. 56.1 Resp. ¶¶ 15-16; Pl. 56.1 TAB 8, p. 38.) The physician layoffs involved first reducing the number of available positions, and then allowing those on staff to apply for the remaining positions through a questionnaire and an interview conducted by a team of three individuals with germane experience and expertise. (Def. 56.1 Resp. ¶ 15; Pl. 56.1 Resp. ¶ 22) The *Shakman* Officer trained the interviewers to ensure that they were asking questions that did not implicate race, gender, or politics, and received all documentation from the interviews including the interviewers' notes. (Def. 56.1 Resp. ¶¶ 15, 17.)

---

forth both matters observed pursuant to a legal duty (the November 30, 2006 SRO) and factual findings resulting from an investigation with authority granted by law. Because Cook County does not point to any circumstances that indicate a lack of trustworthiness, the Court finds the statements within these reports admissible under Federal Rule of Evidence 803(8). *See* Fed.R.Evid. 803(8).

Cook County also objects to all of Everett's statements of fact citing to the Reports of the *Shakman* Officer as conclusory pursuant to *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). However, the facts taken from these reports are not "general allegation[s] of injury" that merely "replace conclusory allegations of the compliant or answer with conclusory allegations of an affidavit." *See id.* at 888-89. Instead, they are specific facts taken from reports of a court-appointed officer. Thus, the Court denies Cook County's objection to these statements as conclusory.

Neither Simon nor Couture had any contact with the *Shakman* Officer regarding the dentist layoffs prior to their occurrence. (Def. 56.1 Resp. ¶¶ 18, 24; Pl. 56.1 TAB 10, p. 47; Pl 56.1 TAB 9, p. 26.) Indeed, the *Shakman* Officer was not involved in the layoffs of dentists at Cermak, and Cook County did not first reduce the number of positions, allow the current staff to apply for those positions, and then interview the current dental staff, as they had with the physicians. (Def. 56.1 Resp. ¶¶ 18-19.)

## STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minn. Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("'Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.'").

13

**<u>DISCUSSION</u>**

## I. *Shakman* Decree Claim

In Count I of her Complaint, Everett alleges that Cook County violated the consent decree entered in *Shakman v. Democratic Org. of Cook County*, 481 F. Supp. 1315, 1358 (N.D. Ill. 1979), *vacated sub nom. Shakman v. Dunne*, 829 F.2d 1387, 1389 (7th Cir. 1987), when it terminated her employment and retained Townsend. The *Shakman* Decree enjoins Cook County from "conditioning, basing, or knowingly prejudicing or affecting any term or aspect of governmental employment, with respect to one who is at the time a governmental employee, upon or because of any political reason or factor." *See id.* A plaintiff alleging a violation of the *Shakman* Decree "has the burden of proof by clear and convincing evidence." *See Shakman v. Democratic Org. of Cook County*, No. 69-2145, 2009 WL 855633, at *2 (N.D. Ill. March 30, 2009) (Andersen, J.) (citing *Maynard v. Nygren*, 332 F.3d 462, 469 (7th Cir. 2003)). Once a plaintiff demonstrates that Cook County prejudiced a term of her employment based on a political reason or factor, the burden shifts to Cook County to show it would have made the same decision notwithstanding the political reason. *See Shanahan v. City of Chicago*, 82 F.3d 776, 780 (7th Cir. 1996).

As an initial matter, Everett has standing to bring this claim because she alleges that she was laid off because of her lack of political activism and affiliation. In order to have standing to bring a claim under the *Shakman* Decree, "a plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *See Plotkin v. Ryan*, 239 F.3d 882, 844 (7th Cir. 2001) (citing *Dunne*, 829 F.2d at 1399). Everett alleges that Cook County injured her personally by terminating her employment. If Cook County laid off

Everett based on a political reason, then its actions would be unlawful under the *Shakman* Decree, and Everett's injury (her termination) would be traceable to Cook County. In addition, Everett's injury would be redressed by her requested relief, which includes granting her back pay and related compensatory damages.

Because the *Shakman* Decree binds Cook County to liability for the actions of its employees under a *respondeat superior* analysis, *see Wzorek v. City of Chicago*, 906 F.2d 1180, 1184 (7th Cir. 1990), it is first necessary to identify for which decisionmakers' actions Everett seeks to hold Cook County liable. Cook County claims that the relevant decisionmakers were both Simon, who made the final decision regarding who would be retained as a dentist at Cermak, and Couture, upon whom Simon depended to objectively examine information about the dentists and make a recommendation. Although Everett argues that "in light of the County's undisputed history of massive political patronage, a fact finder could conclude that someone other than Simon or Couture influenced the decision to choose Townsend" (R. 65 at p. 6), the record does not support that anyone other than Couture or Simon was a decision maker in the layoffs. It is undisputed that Simon did not consult with Fagus or Knox regarding his decision. If Townsend had conversed with Fagus, Knox, or anyone associated with the Cook County government regarding the reduction in force, his skills, productivity, leadership abilities, or management experience, it might lead to an inference that the individual with whom he spoke influenced the decision. It is undisputed, however, that Townsend had no such conversation. Indeed, Everett does not identify any specific individual who she believes influenced the decision making or present evidence tending to suggest that any individual other that Couture affected Simon's decision. Thus, the Court assesses Cook County's *respondeat superior* liability for the actions of Simon and Couture.

In order to show that Cook County laid her off because she was not politically active, Everett must first show that the decisionmakers, Couture and Simon, knew her political affiliation and that of Townsend. *See Shanahan*, 82 F.3d at 781 (citing *Cusson-Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir. 1992) and *Doherty v. City of Chicago*, 75 F.3d 318, 326 (7th Cir. 1996)). Couture unequivocally denied in her deposition that she was aware of the political affiliations of Townsend or Everett, and Everett has not produced any evidence directly rebutting this testimony or showing that any Cook County employee knew of her apolitical affiliation. Everett further admits that she has no knowledge that either Couture or Simon was aware of Townsend's political affiliation. Instead, Everett argues that a jury could infer based on "suspicious circumstances" surrounding the layoffs and "in light of the County's undisputed history of massive political patronage" that Simon and Couture were aware of Townsend's political affiliation. (R. 85 at p. 6.) This general evidence does not, however, lead to the specific inference that Couture and Simon knew of the political affiliations of any of the dentists at Cerkmak. *See Shanahan*, 82 F.3d at 781. Although there is evidence that Knox knew of Townsend's political affiliation because Townsend purchased tickets for an 8th Ward fundraiser from him, Knox was not a decision maker, and indeed was himself laid off. *See, e.g.*, *Healy v. City of Chicago*, No. 00-6030, 2004 WL 1630578, at *12 -13 (N.D. Ill. July 20, 2004) (Hibbler, J.) (granting summary judgment on *Shakman* claim where the employee aware of his co-workers' political affiliations "was not the final decision maker in promotions").

Furthermore, even if Couture or Simon was aware of Townsend's or Everett's political affiliation or of Townsend's contributions to the Democratic Party, the evidence does not support a finding "by clear and convincing evidence" that their decision to retain Townsend was based on political reason or factor. *See Shakman*, 2009 WL 855633, at *2. Everett presents no evidence linking Townsend's political donations to the decision making process or any testimony suggesting

16

that politics entered into the decision. Thus, Everett's claim under the *Shakman* Decree cannot survive summary judgment. *See Shanahan*, 82 F.3d at 781 (where defendant decisionmakers "denied knowledge of political affiliations or associations of anyone involved in the suit," and the plaintiff "did not produce any evidence to rebut these affidavits," "summary judgment was properly entered").

## II. First Amendment Claim under § 1983

Count II of Everett's Second Amended Complaint alleges that Cook County selected Townsend, a less qualified individual, for the remaining dentist position based on his political affiliation and campaign contributions in violation of Everett's right to free association under the First and Fourteenth Amendments and § 1983. Everett further alleges that Cook County has a custom and practice of allowing candidates to be promoted to positions over more qualified applicants based on their political connections or activities.

Cook County cannot be held liable for § 1983 violations under the doctrine of *respondeat superior* "for an injury inflicted solely by its employees or agents." *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978). Instead, Cook County may only be liable for a § 1983 violation if a "deprivation of constitutional rights is caused by a municipal policy or custom." *Kujawski v. Bd. of Comm'rs of Bartholomew County, Ind.*, 183 F.3d 734, 737 (7th Cir. 1999). In order to support a claim that Cook County's "policies or customs violated [her] constitutional rights," Everett "must begin by showing an underlying constitutional violation"—in this case, under the First Amendment. *Schor v. City of Chicago*, 576 F.3d 775, 779 (7th Cir. 2009). Everett then must demonstrate that Cook County's policy or custom caused the constitutional violation. *See id.*

"It is well established that hiring, firing, or transferring government employees based on political motivation violates the First Amendment, with certain exceptions for policymaking

positions and for employees having a confidential relationship with a supervisor."[4]  *Hall v. Babb*, 389 F.3d 758, 762 (7th Cir. 2004); *see also Rutan v. Republican Party of Ill.*, 497 U.S. 62, 64 (1990) (holding that a public employee may not be promoted because of his or her political beliefs unless political loyalty is an acceptable prerequisite for the job).  To make out a *prima facie* case of employment discrimination based on political affiliation, Everett must show: (1) that her conduct was constitutionally protected; (2) that she suffered an actionable deprivation; and (3) that the protected conduct was a but-for cause of the adverse employment action.  *See Gunville v. Walker*, 583 F.3d 979, 984, 984 n.1 (7th Cir. 2009) (First Amendment political affiliation discrimination case explaining that "until the Supreme Court's recent decision in *Gross v. FBL Financial Servs., Inc.*, 129 S.Ct. 2343 (2009), plaintiffs could prevail in a First Amendment § 1983 action if they could demonstrate that their speech was a motivating factor in the defendant's decision. After *Gross*, plaintiffs in federal suits must demonstrate but-for causation unless a statute (such as the Civil Rights Act of 1991) provides otherwise.").  If Everett makes this *prima facie* showing, then Cook County has the burden of demonstrating a legitimate, non-political reason for the employment decision.  *See Hall*, 389 F.3d at 762.

### A. Everett's *Prima Facie* Case

#### 1. Constitutionally Protected Conduct

First, Everett must establish that she engaged in conduct protected under the First Amendment.  Everett presents no evidence that she was affiliated with a particular political party, instead basing her claim on her choice not to be involved in politics or to support a particular candidate.  Just as affiliation with a particular party is constitutionally protected under the First

---

[4] The parties do not argue that either exception applies in this case.  Indeed, there is no evidence in the record indicating that the position of Dentist II was a policymaking position or that Townsend had a confidential relationship with his supervisor so as to qualify under one of these exceptions.  *See Hall*, 389 F.3d at 762.

Amendment, *see Gunville*, 583 F.3d at 984, "[i]t is undisputed that political nonaffiliation is a right protected under the first amendment," *Hermes v. Hein*, 742 F.2d 350, 354 n.3 (7th Cir. 1984) (citing *Elrod v. Burns*, 427 U.S. 374 (1976)). *See also Zerante v. DeLuca*, 555 F.3d 582, 585 (7th Cir. 2009) (plaintiff's "decision to remain neutral in the general election" was a "protected activit[y]"). Thus, the Court finds Everett's nonaffiliation with a political party and decision to remain politically neutral to be constitutionally protected conduct.

### 2. Actionable Deprivation

Everett next must demonstrate that she suffered an actionable deprivation. *See Gunville*, 583 F.3d at 983. Cook County does not dispute that Everett suffered an actionable deprivation when her employment at Cermak was terminated; indeed, discharging a government employee because she is not affiliated with a particular party is an actionable deprivation under the First Amendment. *See Branti v. Finkel*, 445 U.S. 507, 517 (1980). For that reason, the Court finds that Everett has satisfied the second element of her *prima facie* case.

### 3. But-For Causation

Finally, Everett must show that her lack of political affiliation was a but-for cause of Cook County's decision to lay her off. *See Gunville*, 583 F.3d at 984. The burden in this regard is "not insignificant." *Nelms v. Modisett*, 153 F.3d 815, 818 (7th Cir. 1998) (quoting *Nekolny v. Painter*, 653 F.2d 1164, 1168 (7th Cir. 1981)) ("A disgruntled employee fired for legitimate reasons would not be able to satisfy his burden merely by showing that he carried the political card of the opposition party or that he favored the defendant's opponent in the election."). In other words, "[i]t is not enough to show only that the plaintiff was of a different political persuasion than the decisionmakers." *See Hall*, 389 F.3d at 762.

Cook County claims that Everett cannot show that the layoff decisions were in any way based on her apolitical affiliation. *See Gunville*, 583 F.3d at 984. "In analyzing this issue, the threshold question is whether" the decisionmakers "even knew about" Everett's protected conduct. *See Zerante*, 555 F.3d at 582. A decision maker cannot discriminate on account of the protected activity if he is unaware of the protected activity. *See Healy v. City of Chicago*, 450 F.3d 732, 740-41 (7th Cir. 2006). As explained in Section I *infra*, the relevant decisionmakers with respect to the layoffs of dentists at Cermak were Couture and Simon.

Everett argues summarily and without pointing to any specific facts in the record that she "has produced sufficient evidence from which a fact finder could infer political factors influenced the decision to choose Dr. Townsend." (R. 85 at p. 7.) Everett ignores, however, that in order to show that Simon or Couture "wanted to favor [Townsend over Everett] because of his political involvement," they must have known of her apolitical affiliation—in other words, they could not have discriminated against her if they did not know that she was less active in politics than Townsend. *See Hall*, 389 F.3d at 762. As explained in Section I *infra*, Everett has not produced any evidence that Couture or Simon knew of her political affiliation beyond her own "speculation." *See Nelms*, 153 F.3d at 819 (citing *Sybron Transition Corp. v. Security Ins. Co. of Hartford*, 107 F.3d 1250, 1254 (7th Cir. 1997) ("A party must present more than mere speculation or conjecture to defeat a summary judgment motion.")). Indeed, Couture (upon whom Simon relied heavily in making his decision) affirmatively denied any knowledge of Everett's or Townsend's political views, and there is no evidence suggesting that Simon was aware of Everett's politics. Everett has thus failed to present evidence from which a trier of fact could reasonably infer awareness of her apolitical affiliation on the part of Couture or Simon. *See Kelly v. Mun. Ct. of Marion County, Ind.*, 97 F.3d 902, 912 (7th Cir. 1996) (without evidence that supervisor was aware of plaintiff's decision

to withdraw from politics, plaintiff failed to demonstrate that his political views were a motivating or substantial factor in his termination); *see also Hall*, 389 F.3d at 763 ("Hall's failure to offer evidence that would have shown that at least two of the three hiring committee members knew about the political background of the two applicants, or that the hiring decision was manipulated by one member who possessed such knowledge, dooms his case.").

Even if she could demonstrate awareness of her political nonaffiliation on the part of Couture or Simon, however, Everett also must show that they took action against her because of that political nonaffiliation. *See Gunville*, 583 F.3d at 984. Everett claims that Townsend's political contributions to various facets of the Democratic Party lead to an inference that politics influenced the decision. Although Townsend's $300 donation to the 8th Ward Regular Democratic Organization where Cook County Board President Stroger's political base is located leads to an inference that Townsend is politically involved and that he supports the Democratic Party, it does not indicate that Townsend's politics in any way influenced the layoff decisions that occurred nearly seven years later. Indeed, Townsend testified that he does not know that Stroger's political base is in the 8th Ward, there is no evidence or allegation that Stroger participated in the decision making in this case, and Simon testified that no one ever asked him to retain a certain dentist based on personal preferences. Similarly, there is no evidence connecting Townsend's campaign contributions to Alderman Lyle with the dentist layoff decisions. Thus, the evidence of Townsend's campaign contributions does not, by itself, create a genuine issue of material fact as to whether Everett's political nonaffiliation was a but-for cause of her layoff. *See, e.g.*, *McCarthy v. Chi. Park Dist.*, No. 87 C 8590, 1988 WL 56222, at *3 (N.D. Ill. May 18, 1988) (Aspen, J.) ("In the absence of proof that the employer was motivated by political affiliation in favoring one employee over another, evidence of the unfavored employee's superior qualifications coupled with identification

of the favored employee's political connections are insufficient to withstand summary judgment in a First Amendment claim challenging that favortism.")

Everett also cannot rely on "self-serving declarations based on nothing more than h[er] own speculation" to defeat summary judgment. *See, e.g.*, *Healy*, 2004 WL 1630578, at *6 (citing *Kelly*, 97 F.3d at 911). Although Everett speculates that politics influenced the layoff decisions because she had more seniority than Townsend and Cermak did not perform interviews as it had for the physician positions, Everett fails to demonstrate the crucial link between any decision maker's knowledge of her constitutionally protected apolitical affiliation and the decision to lay her off. *See Gunville*, 583 F.3d at 987 ("That the decision-makers may have been unqualified to conduct the task of restructuring . . . tells us nothing about whether the motive for the layoffs was improper. There is a sizable leap from conducting a restructuring ineptly to conducting it for improper purposes . . . . The plaintiffs have failed to create a genuine issue of fact regarding whether the defendants used political affiliation in determining who would be laid off."); *see also Roger Whitmore's Auto Serv., Inc. v. Lake County, Illinois*, 424 F.3d 659, 669 (7th Cir. 2005) (even where plaintiff had evidence that defendant was "upset" that he chose not to support a certain candidate in a primary election, his evidence was not direct enough to show that his political affiliation "was a substantial or motivating factor in the modification of his towing area").

Because Everett fails to present evidence that Couture or Simon knew of her apolitical affiliation or that politics was a but-for cause of the layoff decision, she cannot make out a *prima facie* case of discrimination under the First Amendment. *See Gunville*, 583 F.3d at 984.

### B. Policy or Custom Showing under *Monell*

Because Everett cannot show that Couture, Simon, or any other Cook County employee caused her to suffer a constitutional injury, she cannot succeed in her claim against Cook County

under *Monell*, 436 U.S. 658. The analysis in Section II(A)(3) *infra* demonstrates that Everett has not established the requisite level of knowledge or but-for causation to show a constitutional violation by any Cook County decision maker. As such, "there is no wrongful conduct that may become the basis for holding the C[ounty] liable" under *Monell*, 436 U.S. 658. *See Schor*, 576 F.3d at 779 (upholding dismissal of *Monell* claim against the City of Chicago because "plaintiffs [did] not allege[] any plausible constitutional violation committed by Mayor Daley or the officers" and so there was no basis upon which to hold the County liable); *see also Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (if the individual defendant "inflicted no constitutional injury," then it is "inconceivable" that the City and Police Commission "could be liable" under *Monell*). There is no need, then, to determine whether Cook County had a "municipal policy or custom" of restraining its employees First Amendment rights under *Monell*, 436 U.S. 658. *See Kujawski*, 183 F.3d at 737. For that reason, the Court grants Cook County's Motion for Summary Judgment as to Count II of Everett's Second Amended Complaint.

### III.     Race and Gender Discrimination Claim under Title VII

In Count IV of her Second Amended Complaint, Everett alleges that she suffered race and gender discrimination when Cook County laid her off. Title VII prohibits employment discrimination on the basis of an employee's gender, race, religion or national origin. *See* 42 U.S.C. § 2000(e) *et seq.* A plaintiff may show race or gender discrimination by proceeding under either the direct or the indirect method of proof. *See Atanus v. Perry*, 520 F.3d 662, 672 (7th Cir. 2008).

### A.     Direct Method of Proof

Under the direct method of proof, a plaintiff may establish unlawful discrimination by presenting direct or circumstantial evidence that creates a "convincing mosaic of discrimination." *See Winsley v. Cook County*, 563 F.3d 598, 604 (7th Cir. 2009). Direct evidence of discrimination

23

generally consists of an admission that the employer took an adverse employment action based upon prohibited animus. *See Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003). Circumstantial evidence of discrimination under the direct method can consist of suspicious timing, ambiguous statements, differing treatment of similarly situated employees, personal animus, pretext, and other evidence that would allow the jury to reasonably infer retaliation. *See Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007). To survive summary judgment, the plaintiff must present evidence of a link between her protected status and the adverse employment action. *See Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003) ("Bigotry, per se, is not actionable. It is actionable only if it results in injury to a plaintiff; there must be a real link between the bigotry and an adverse employment action.") (internal citation omitted).

Here, Cook County has not admitted that it administered the layoffs pursuant to a discriminatory animus. *See Rogers*, 320 F.3d at 753. Instead, Everett claims that a jury could infer discriminatory animus from Cook County's handling of the layoffs. Everett has presented no evidence, however, that anyone at Cermak made a remark regarding her race or gender, and admits that she has no knowledge that Simon or Couture made their decisions based on race or gender. Although Cermak retained a male, African-American dentist, it also laid off two male dentists and two African-American dentists. Furthermore, there is no evidence that Couture disposed of her notes when she left Cermak for any suspect reason or that she held any personal animus tending to refute her testimony that race and gender did not enter into her recommendation. In light of the fact that Everett has not presented evidence of suspicious timing, ambiguous statements, personal animus, or pretext, the circumstantial evidence emphasized by Everett is insufficient to demonstrate a "convincing mosaic of discrimination." *See Winsley*, 563 F.3d at 605.

Moreover, Everett puts forth no evidence directly linking Cermak's decision to lay her off with her protected characteristics. *See Adams*, 324 F.3d at 939. Although Everett claims that she was laid off because of her race and gender, a plaintiff's bare assertion that an employer mistreated her because of her protected status is not sufficient to establish a link between the protected status and the treatment she received. *See Winsley*, 563 F.3d at 605 (citing *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 337 (7th Cir. 1991) ("[A] plaintiff's speculation is not a sufficient defense to a summary judgment motion.")). Because Everett has not provided sufficient direct or circumstantial evidence of intentional discrimination based upon her race or gender, she has failed to establish a *prima facie* case under the direct method of proof. *See id.*

**B. Indirect Method of Proof**

In order to establish a *prima facie* case of discrimination under the indirect method, Everett must show that: (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was performing her job satisfactorily; and (4) a similarly situated individual outside her protected class was treated more favorably. *See LaFary v. Rogers Group, Inc.*, 591 F.3d 903, 907 (7th Cir. 2010). If Everett sets forth her *prima facie* case, the burden shifts to Cook County "to produce a legitimate, noninvidious reason for its actions." *Atanus*, 520 F.3d at 672. If Cook County then "rebuts the *prima facie* case, the burden then shifts back to the [Everett] to show that the reasons proffered . . . are merely pretextual." *Hobbs v. City of Chicago*, 573 F.3d 454, 460 (7th Cir. 2009).

Cook County does not contest that Everett has established the first, second, and third elements of her *prima facie* case, instead arguing that Everett cannot show that it treated similarly situated employees who were not part of the protected classes more favorably. Everett claims that Townsend was similarly situated to her, and yet was treated more favorably when Cook County

selected him for the remaining dentist position. The facts do not, however, show Townsend to be similarly situated to Everett in terms of qualifications for the remaining position. Simon selected Townsend for the position on the recommendation of Couture, who had known both Everett and Townsend since she worked as Director of Emergency Services at Cermak between 2000 or 2001 and 2004, and was aware of their respective work habits, responsiveness, and complications resulting from their treatment. Couture observed Townsend to be responsive to physician's requests, flexible in squeezing patients into his schedule, and to have a grasp of systemic problems. She made no such observations about Everett. These qualities were understandably important to Cook County because the remaining dentist would have to serve all emergent care needs and be able to function in a practice that had previously included five dentists.

Townsend also had management experience through serving as Acting Director numerous times at Knox's request—a quality that would enable him to supervise the restructuring and perform management responsibilities in his capacity as the sole remaining dentist.[5] Everett never requested or expressed desire to be Acting Director. Although the 2003 Dental/Oral Surgery Individual Statistics show that Everett completed 248 sessions while working 60% time and Townsend performed 284 sessions while working full time, efficiency was not the only quality that Couture emphasized in her selection process. Indeed, Couture focused on each dentist's knowledge about emergent dental care, such as extractions, pain and suffering, infection, and decay, because the dental services at Cermak were going to be trimmed down to only essential services.

---

[5] There is a factual dispute between the parties as to the level of responsibility involved in being Acting Director, with Townsend testifying that it involved attending department head meetings, changing schedules, and anticipating court orders (Pl. 56.1 Resp. ¶ 37), and Knox testifying that it "was more like a paper responsibility than an actual responsibility" that did not change Townsend's status (Def. 56.1 Resp. ¶ 38). Regardless of the precise nature of the substantive responsibilities involved, however, it is undisputed that Townsend accepted these responsibilities frequently throughout his tenure as Dentist II, and that Everett, although she could have requested to be Acting Director, never did so.

Everett argues that because Cook County did not perform interviews and consider seniority in the same manner as it did for the remaining physician positions, she has demonstrated the suspicious nature of the selection process in a way that satisfies her *prima facie* case. Not only did Cook County rules not require Couture to interview the dentists at Cermak prior to the layoffs, however, but even if Cook County had deviated from its formal procedures in making layoff decisions, that would be insufficient to satisfy the fourth prong of Everett's *prima facie* case. *See id.* at 461 (rejecting the argument that a "prima facie case must be presumed" where "the City deviated from its formal written procedures" because the plaintiff still had to "meet the fourth prong of the prima facie case and prove her superior qualifications," which she failed to do). Thus, Everett has failed to show that she was as qualified or more qualified than Townsend for the remaining dentist position so as to make out a *prima facie* case under the indirect method of proof. *See id*.

Moreover, even if Everett had established her *prima facie* case, Cook County has offered nondiscriminatory reasons for retaining Townsend, including his characteristics of flexibility, responsiveness, and knowledge throughout Couture's experience with him, and his willingness to assume the leadership role of Acting Director on many occasions. *See id.* at 462 (explaining that employer had demonstrated legitimate, nondiscriminatory reasons for promoting one employee over another where the chosen employee "volunteered to work the snow program, while [plaintiff] refused to do so, which demonstrated [his] willingness to work on the streets-one of the qualities [the decision maker] was looking for").

Because Cook County has proffered legitimate reasons for retaining Townsend instead of Everett, the burden returns to Everett to demonstrate that these reasons are pretextual. *See id.* at 460. "Pretext is a 'lie, specifically a phony reason for some action.'" *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 737 (7th Cir. 2006) (quoting *Russell v. Acme-Evans, Co.*, 51 F.3d 64, 68 (7th Cir.

1995)).  To demonstrate pretext, Everett must show that: (1) Cook County's "nondiscriminatory reason was dishonest"; and (2) Cook County's "true reason was based on a discriminatory intent." *Fischer v. Avanade, Inc.*, 519 F.3d 393, 403 (7th Cir. 2008) (internal quotation marks and citation omitted); *see also Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 646 (7th Cir. 2006) ("In a word, the Plaintiff must establish that . . . [the employer's] reasons . . . were merely made up to cover up . . . discriminatory reasons.").

Here, like in *Hobbs*, Everett has not shown that Cook County lied about its reasons for retaining Townsend.  *See Hobbs*, 573 F.3d at 461.  She puts forth no personal knowledge of any racist or sexist statements or conduct in her attempt to demonstrate pretext; and her "mere assertion that she is better qualified will not do the trick to prove the C[ounty] is lying about the real reason it picked [Townsend] for the spot."  *See id.*  Everett argues that "the suspicious nature of the process by which the lay off was conducted precludes a finding at the summary judgment stage that Cook County had an honestly held, but mistaken belief that Dr. Townsend should be retained instead of Dr. Everett."  (R. 85 at p. 5.)  Many of the suspicious facts that Everett points to are, however, explained or minimized through other undisputed facts.  For example, Everett emphasizes that she had greater seniority than Townsend, but it is undisputed that it was important for Simon and Couture to consider factors other than seniority because often those individuals with the most seniority would perform less clinical and more administrative work, or would not have as much experience in a particular area.  Although Cook County did not conduct interviews of the dentists, it was not necessary to interview candidates where one individual was going to be retained and the director could make a determination based on the data and information available.  Indeed, because only one dentist would be retained at Cermak, no Cook County rule required Couture to interview the dentists at Cermak prior to the layoffs.  Additionally, while Prozorovski—a male, Caucasian

28

dentist—was transferred to Cermak's budget in 2008, his transfer occurred after the layoff decisions at issue and thus does not demonstrate pretext in those decisions. If anything, the fact that Prozorovski is Caucasian undermines Everett's claim that Couture (who was involved in both decisions) is biased against Caucasians. The JTDC's decision to hire Liu for a short period of time in 2008 also does not lead to an inference that Cook County's proffered reasons are pretextual because Liu was laid off alongside Everett, his re-hire was only temporary, and the circumstances surrounding that re-hire (including the relevant decisionmakers) are unknown.

It is true that Couture's decision making process was not the most thorough. She did not consult with Knox, Fagus, or the *Shakman* Officer about her recommendation, threw away the notes from her conversations with Cermak medical directors, and did not review the Personnel Rules before making her recommendation. It is also true that Couture did not forward any notification regarding seniority of the dentists to Cermak Health Services prior to the layoffs in compliance with Personnel Rule 7. Evidence that the process by which layoffs were conducted was not the most fair, does not, however, show that gender or race was at the root of Couture's or Simon's actions. *See Hobbs*, 573 F.3d at 461 ("Although the process through which Quinn received his promotion might be questionable, it does not prove gender or race discrimination" so as to survive a motion for summary judgment); *see also Blise v. Antaramian*, 409 F.3d 861, 867 (7th Cir. 2005) ("[The court does] not sit as a superpersonnel department where disappointed applicants or employees can have the merits of an employer's decision replayed to determine best business practices.") (internal quotation marks and citation omitted). The Court, therefore, finds that Cook County is entitled to summary judgment with respect to Count IV of Everett's Second Amended Complaint.

## IV. Common Law Writ of Certiorari

Finally, in Count V, Everett asserts a supplemental state law claim for common law writ of certiorari requiring Cook County to certify the entire record of proceedings by its hearing examiner for review by this Court. Because the Court has granted summary judgment on each of Everett's claims giving rise to federal jurisdiction, the Court declines to exercise jurisdiction over this remaining state law claim. "When all federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction pursuant to § 1367(c)(3)." *Hansen v. Bd. of Trustees of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008); *see also Wright v. Associated Ins. Co., Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) (when "all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits"); 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-- . . . (3) the district court has dismissed all claims over which it has original jurisdiction.").

There are, however, "three acknowledged exceptions to this rule: when (1) the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." *Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 514-515 (7th Cir. 2009) (internal citation and quotation marks omitted). With respect to the first exception, "[28 U.S.C. §] 1367(d), which grants the plaintiff an additional 30 days to re-file dismissed supplemental claims in state court, 'removes the principal reason'—the expired statute of limitations—'for retaining a case in federal court when the federal claim belatedly disappears.'" *Hopkins v. White*, 292 Fed. Appx. 497, 500 (7th Cir. 2008) (quoting *Myers v. County of Lake*, 30 F.3d 847, 848-49 (7th Cir. 1994)).

Turning to the second exception, because the Court has resolved Everett's federal claims on summary judgment, "substantial judicial resources" have not yet been committed to the case. *See Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008) ("[T]he district court disposed of the federal claims on summary judgment, and so 'substantial judicial resources' have not yet been committed to the case."); *see also Tokh v. Water Tower Court Home Owners Ass'n*, 327 Fed. Appx. 630, 632 (7th Cir. 2009) (upholding district court decision declining to exercise supplemental jurisdiction after resolving all federal law claims on summary judgment).

Finally, it is not "absolutely clear" how this supplemental state law claim should be decided. *See Sharp Electronics*, 578 F.3d at 515. The claim requires a determination of whether the Personnel Rules afforded Everett a right to appeal the decision, whether Everett had a right to appeal through the common law, and whether a review of all evidence provided to the hearing examiner demonstrates that his decision was "manifestly against the weight of the evidence." *See Maccox v. Williamson County Bd. of Comm'rs*, 475 N.E.2d 1349, 1354 (Ill. App. Ct. 1985). Moreover, because Cook County has not yet certified to the Court that it has produced the entire record of the hearing or set forth all evidence provided to the hearing examiner as part of its statement of facts in this Motion for Summary Judgment, the Court cannot assess whether the decision was manifestly against the weight of the evidence. *See id.*

Because "the district court should relinquish jurisdiction over pendent state-law claims" when "all federal claims are dismissed before trial" unless one of the exceptions applies, *see Wright*, 29 F.3d at 1251, the Court relinquishes supplemental jurisdiction over Count V of Everett's Second Amended Complaint.

**CONCLUSION AND ORDER**

For the reasons stated, the Court grants Cook County's Motion for Summary Judgment as to Counts I, II, and IV, and relinquishes jurisdiction over Count V. As explained above, the Court has already dismissed Count III pursuant to an agreed motion by the parties.


Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: March 30, 2010